(162 App. Div. 685)

### CAMPBELL v. McNULTY BROS. et al.   (No. 5878.)

(Supreme Court, Appellate Division, First Department.   May 29, 1914.)

MASTER AND SERVANT (§ 106*)—INJURY TO SERVANT—DEFECTIVE MACHINERY
—LIABILITY OF MASTER.

> A subcontractor, who directs his employés to make use of the hoist
> installed for the general contractor, paying for its use, has the absolute
> nondelegable duty, under Labor Law (Consol. Laws, c. 31) § 18, as amend-
> ed by Laws 1913, c. 693, to make the hoist safe for his employés.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–
> 198; Dec. Dig. § 106.*]

Appeal from Trial Term, New York County.

Action by Martin Campbell against McNulty Bros., a corporation,
and another.   From a judgment of dismissal as to defendant named,
plaintiff appeals.   Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and DOWLING, JJ.

Edward W. Beattie, Jr., of New York City (Ernest G. Stevens, of
New York City, of counsel), for appellant.

James B. Henney, of New York City (Edward F. Lindsay, of New
York City, of counsel), for respondent.

CLARKE, J.   The complaint alleges that the Geo. A. Fuller Com-
pany was the general contractor for the erection of the new post office
building at Thirty-First street and Eighth avenue; that the defendant
Thomas & Buckley Hoisting Company had a contract with said Ful-
ler Company providing for the installation and operation of one or
more elevators or hoists to be used by the various subcontractors in
the construction of said building, and had installed and was operating
an elevator or hoist and the machinery connected therewith; that the
defendant McNulty Bros. had a contract with the said Fuller Com-
pany for the plaster work, and was engaged in the performance of
said work; that plaintiff was on June 25, 1912, in the employ of Mc-
Nulty Bros. as a plasterer's helper, his duties consisting of unloading
from said elevator car or hoist quantities of construction material and
of distributing the same on the various floors for use by the plasterers,
and that plaintiff was directed and required by said McNulty Bros. to
use and ride on said elevator car or hoist in the performance of his
work; that while plaintiff was in such employ and engaged in the per-
formance of his said work, and for that purpose while riding with a
fellow employé upon said elevator car or hoist, and without fault or
negligence on his part, said car or hoist without notice or warning
dropped headlong with the greatest violence to the cellar of said build-
ings, a distance of about four stories, carrying both men and a quantity
of building material with it; that said accident was due to a defective
condition of the brake band on the hoisting engine operated in connec-
tion with said elevator car or hoist, and by means of which it was
raised and lowered, as a result of which defective condition said brake
band broke, without notice or warning to plaintiff, through and by rea-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

son of the fault, carelessness, and negligence of defendants, their agents, servants, and employés. There was a written stipulation by which McNulty Bros. admitted that at the time of the accident it was using the hod hoist for raising material through the permission of the general contractor, which hoist was installed and operated by the Thomas & Buckley Hoisting Company pursuant to agreement with the Geo. A. Fuller Company and that McNulty Bros. was charged by the Geo. A. Fuller Company for said use and paid for same.

On the opening the court dismissed the complaint as to McNulty Bros., upon its motion, and then a juror was withdrawn, as none of the parties cared to go on as against the Thomas & Buckley Hoisting Company alone until the question of the liability of the plaintiff's immediate employer, McNulty Bros., was settled. At the time of the trial the judgments in the following cases had been made and stood unreversed, and it was upon them that the learned trial court granted the motion:

In Bohnhoff v. Fischer, 149 App. Div. 747, 134 N. Y. Supp. 28, one Kennedy was the general contractor, and one Fischer was a subcontractor for the construction of the iron work. The building was nearing completion. The work under way at the time of the accident was the construction of a penthouse, a projection upon the main roof for the accommodation of the elevator machinery. This penthouse was about 12 feet above the roof. Kennedy's employés, who were at work upon this part of the structure laying bricks, had constructed a runway by placing two planks, with one end upon the main roof and the other upon wooden horses, with two other planks running from this house to the roof of the penthouse, at the same time and place defendant Fischer's men were placing some of the last of the iron work. Plaintiff was in the employ of Fischer as an iron worker, and was caused to fall and was injured by the alleged negligent manner in which said plank was laid. The evidence was undisputed that the runway was constructed and maintained by Kennedy or his employés, and that it was used in common by the employés of Kennedy and Fischer. The broad question upon the appeal was whether the defendant Fischer was to be charged with responsibility under the provisions of section 18 of the Labor Law (now chapter 31, Consol. Laws; Chapter 36, § 18, Laws 1909, as amended by chapter 693, Laws 1911). Writing for the Appellate Division, Second Department, Mr. Justice Woodward said:

"We must examine the language, therefore, and determine whether a subcontractor, doing no act in reference to the furnishing of materials or the construction of a scaffolding, but who merely sends his employés to a building to do certain work, and they make use of the structures erected by the general contractor for the use of his employés in work of a like general nature, is liable under this section of the Labor Law if such scaffolding falls and results in injury to his employés."

The court held that the subcontractor, Fischer was not liable; Burr and Rich, JJ., dissenting, on the ground:

"That if a master permits his employé to make use of a scaffold constructed by another, it is his duty to see to it that it is safe for the purpose for which he permits it to be used."

Boyle v. Robinson, 154 App. Div. 1, 138 N. Y. Supp. 695, was a case in this department. In that case the plaintiff was in the employ of the firm of William Baumgarten & Co. as a plasterer's laborer, and was injured by the fall of a hod-hoisting elevator in a building then being erected. The defendant Andrew J. Robinson Company was the general contractor for the erection of the building. Pursuant to a contract with it, the Stanley Hod Elevator Company installed a hod-hoisting elevator in the building and an engine and boiler outside, but connected therewith, and furnished an engineer to operate the same. The testimony was that the elevator was put in for the use of the Robinson Company primarily—

"for we had to hoist our materials before any of the subcontractors generally would want it, and for any subcontractors that desired to use it. We were generally willing to make arrangements with them to use it. They were supposed to pay something for the use of it generally."

On the day of the accident the plaintiff was directed by his foreman to remove two loads of mortar from trucks in the street and to convey it on this hoist to the fourth floor of the building. While he was so engaged the hoist fell, owing to the breaking of a cast steel cable five-eighths of an inch in diameter. The appeal was from a judgment of dismissal of the complaint. The majority of the court reversed the dismissal as against the Andrew J. Robinson Company, the general contractors, and the Stanley Hod Elevator Company, which put in the elevator, but affirmed as to the defendants Baumgarten & Co., upon the authority of Bohnhoff v. Fischer, supra. Mr. Justice Laughlin, dissenting, with whom Mr. Justice Dowling concurred, said:

"The liability of a subcontractor making use of a hoist owned by a hod elevator company and installed and operated by it under a contract with the general contractor, as did the plaintiff's employer, has not been decided by the Court of Appeals; but in Bohnhoff v. Fischer the Appellate Division in another department by a vote of three to two decided that a subcontractor would not be liable in such case. * * * I am of opinion the plaintiff's employers *furnished* the hoist for his use within the fair intent and meaning of the statute. Doubtless in making their contract they counted on using the hoist to be installed in the building at the instance of the general contractor. The hoist was a time-saving appliance. * * * The employé had no option in the premises. He was obliged to use the hoist or give up his employment. He had no time or opportunity, even if he possessed the necessary qualifications, to examine and test the hoist for himself. The operation of the statute is not confined to those who *erect* the hoist, or cause it to be erected. It extends to every person *employing or directing another to perform labor* of any kind in the erection of a building, *who furnished* a hoist for their use in the performance of such labor. Baumgarten & Co. employed the plaintiff, and they, so far as he is concerned, *furnished* this hoist for him to use in performing the labor of moving this mortar from the ground to the fourth floor. It is contended in behalf of Baumgarten & Co. that they did not own the hoist, that they were not in control of it, and that they had no right to inspect or repair it; but the answer to that argument is that they were not under any obligation to use it. If they desired to use it for the purpose of economizing time and saving money, they might have so contracted with the general contractor or with the hod elevator company that they would have had the right to inspect the hoist and to make repairs. This legislation was designed for the protection of employés who are obliged to work for a livelihood wherever and in such manner as they are directed, and are utterly powerless to protect their own lives and limbs in the dangerous employments to which the statute relates. The statute, therefore, should receive a liberal

interpretation to accomplish that purpose, and not be unnecessarily confined and limited so that further legislative action will be required to accomplish what was sought to be accomplished by the statute when enacted in its present form."

After the trial of the case at bar, the Bohnhoff Case was reversed by the Court of Appeals, 210 N. Y. 172, 104 N. E. 130. Judge Miller said:

"It is now settled law that the said statute is to be liberally construed to accomplish its beneficent purpose—that is, the better protection of workmen engaged in certain dangerous employments—and that the duty imposed upon the employer to furnish safe scaffolding, etc., cannot be delegated. Scaffolding is thus made by statute a place to work which it is the duty of the employer to furnish. He can no more delegate that duty to some other contractor engaged in the work than to an independent contractor of his own, or one of his own employés, and it can be of no consequence whether he directly employs, or tacitly suffers, another to perform that duty for him. In this case some means of access to the roof of the penthouse was necessary. The appellant furnished none whatever. His employés were thus left to choose between the runway or the less convenient ladder, both furnished by another. Having furnished none of his own, he must be held to have adopted the means at hand, or the statute loses its efficacy."

In the case at bar the subcontractors, plaintiff's employers, made use of the hoist, paid for said use, and affirmatively directed the plaintiff to use it in the prosecution of their work. Plaintiff did not exercise a voluntary choice of one means among others of getting upstairs and carrying up the materials required. This hoist was furnished and prescribed by the employer for the employé to enable him to do his work. The facts bring the case precisely within the decision of the Court of Appeals in the Bohnhoff Case, therefore within the rule of absolute duty, which could not be delegated.

The dismissal of the complaint upon the opening was error, and the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.